FILED
Clerk
District Court
OCT 16 2018
for the Northern Mariana Islands
By_____
(Deputy Clerk)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| MILAN FARGO, | Case No. 16-CV-00024 |
| Plaintiff, | |
| v. | DECISION AND ORDER DISMISSING FARGO'S MANDAMUS CLAIMS |
| DEPARTMENT OF HOMELAND SECURITY, | |
| Defendant. | |

## I. INTRODUCTION

Milan Fargo is an alien seeking a court order to compel the Department of Homeland Security to issue him certain immigration documents, including some documents from his Alien file ("A-file") pursuant to the Freedom of Information Act ("FOIA").[1] On July 30, 2018, the Court allowed Fargo's FOIA claim to go forward, but dismissed without prejudice his mandamus claims requesting that the Court order the Government (1) to give him a copy of an advance parole purportedly granted to him on December 22, 2016, (2) to decide his application for refugee status, and (3) to provide a replacement permanent resident card. (Order Granting Fargo's Motion to Proceed in Forma Pauperis, ECF No. 31 ("Order").) The Court observed that "Fargo's pleadings do not show that he has no other adequate means to obtain the documents he seeks from the agency . . . within a reasonable amount of time[, or] that he has a pending application

---

[1] Fargo was placed in removal proceedings in September, 2016 and has been released on his own recognizance. (Order of Release on Recognizance, ECF No. 9-1 at 3-4.)

1

for refugee status awaiting agency action." (*Id.* at 6–7.) The Court gave Fargo until August 10, 2018, to file an amended complaint. (*Id.* at 8.) On August 9, 2018, Fargo filed amendments, in a document titled My Responses Honorable Court's Order to Leave to Amend (ECF No. 33) ("Responses"). Because Fargo is proceeding pro se, without the assistance of a lawyer, the Court will liberally construe the Responses as amending Fargo's earlier requests for mandamus relief (see Order at 3–5) and, taken together, constituting an amended complaint.

## II. LEGAL STANDARD

Before service on defendants, all in forma pauperis complaints must be screened to ensure that they are not frivolous or malicious, that they state a claim on which relief may be granted, and that they do not seek monetary relief against an immune defendant. 28 U.S.C. § 1915(e)(2)(B); *Lopez v. Smith,* 203 F.3d 1122, 1129 (9th Cir. 2000); *Bertha v. Sullivan,* 719 Fed. Appx. 516, 519 (7th Cir. 2017) ("Bertha was proceeding in forma pauperis, so the judge could have screened the amended complaint under § 1915(e)(2)(B)"). The standard for adequately stating a claim is the same as the one that is applied under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Watison v. Carter,* 668 F.3d 1108, 1112 (9th Cir. 2012). A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## III. DISCUSSION

All three of Fargo's claims are for mandamus relief. "Mandamus is an extraordinary remedy and is available to compel a federal official to perform a duty only if: (1) the individual's claim is clear and certain; (2) the official's duty is nondiscretionary, ministerial, and so plainly prescribed as to be free from doubt, and (3) no other adequate remedy is available." *Patel v.*

*Reno,* 134 F.3d 929, 931 (9th Cir. 1997). When mandamus is sought on grounds that an agency has unreasonable delayed taking required action, the reasonableness of the delay is evaluated under the so-called *TRAC* factors: (1) rule of reason, (2) whether Congress has provided a timetable, (3) whether human health and welfare are at stake, (4) the cost to other higher-priority agency activities in forcing immediate action, and (5) the nature and extent of the interests prejudiced by the delay. *In re A Community Voice,* 878 F.3d 779, 786 (9th Cir. 2017) (citing *Telecommunications Research and Action Center v. F.C.C. ("TRAC"),* 750 F.2d 70, 80 (D.C. Cir. 1984)). A sixth factor is a caution that "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed." *Id.* (quoting *TRAC,* 750 F.2d at 80).

### 1. 2016 Advance Parole and Employment Authorization Card

Fargo states that his employment authorization card (or employment authorization document, EAD, known as a work permit) was confiscated by the Saipan office of Immigration and Customs Enforcement (ICE) in August 2017, and that he now understands that the EAD also serves as an advance parole. (Responses at 1.) His understanding is based on his reading of a letter from a "Mr. Anderson" that his advance parole was combined with his EAD, which Fargo has dubbed the "combo card." (*Id.*) He further states, "I am afraid to demand my card back [from ICE] because they can cancel my release on my own recognizance at any time." (*Id.*) Fargo is referring to the fact that he is in removal proceedings and has been released on recognizance with specific conditions. (Motion for Relief from [Saipan ICE Office's] Restrictive 9/19/2016 Order Violating my Right to Free Movement, May 25, 2017, ECF No. 9, at 3–4.)

For screening purposes, Fargo has plausibly pled a clear and certain claim to an EAD. He submitted a copy of an I-797 Notice of Action from the USCIS Texas Service Center showing that his I-765 "application for employment authorization and advance parole has been

approved[,]" and that the EAD will be sent to him separately. (ECF No. 19, at 3–4.) The notice states that the authorization is valid from December 19, 2016, to December 18, 2018. (*Id.*)

Fargo has not, however, pled facts that would show ICE has a ministerial duty to return his EAD to him. The purpose of the writ of mandamus is "to compel an administrative officer to do a nondiscretionary administrative act." *Finley v. Chandler,* 377 F.2d 548, 548 (9th Cir. 1967). Fargo has not pled that ICE has a nondiscretionary duty to return his EAD to him. Rather, he is implicitly asking the Court to determine that ICE had no right to confiscate his EAD and then issue an injunction ordering ICE to return it.

Further, by his own admission Fargo has failed to take the first administrative step to regaining his EAD, which he also claims includes his 2016 advance parole: asking for it back. Fear that his recognizance release will be revoked, even if it were well founded, is not a sufficient reason not to make the direct request at the Saipan ICE office, which no doubt is already aware that he is litigating against their parent agency in the district court in Saipan. Fargo's amendment fails to show he had no adequate means to obtain the document from the agency. He thus fails to show he is entitled to a writ of mandamus.

2. <u>Replacement Permanent Resident Card</u>

In his initial complaint filed on May 30, 2018 (consolidated case No. 18-CV-00016, ECF No. 1-1), Fargo stated that his permanent resident card (green card) was lost in the mail twice, that on November 2, 2017, he received assistance at the Saipan USCIS office in applying online for a replacement card, but that he has received no response. He now seeks a writ of mandamus to have DHS USCIS issue a receipt notice of his Form I-90 Application, or a decision, or a replacement green card because more than six months have passed and he has not received any response. (*Id*. at 7–9.)

In support of his claim, Fargo submitted copies of his May 2018 e-mails addressed to "dhsexecsec" and "AskDOJ" claiming DHS USCIS has never responded to his Form I-90

Application and seeking assistance. (*Id*. at 9–10.) Separately, he submitted to the Court in this case a letter from U.S. Citizenship and Immigration Services (USCIS) dated March 17, 2017, informing him as follows: "We have received your service request regarding your Permanent Resident Card. On December 22, 2016, your card was mailed to the address on record at that time. However, the post office returned it to us as undeliverable. We have requested your card be re-mailed to the provided address. Please allow 90 days for delivery." (1:16-cv-00024, ECF No. 19.)

In an email to the Department of Homeland Security Executive Secretary, dated February 22, 2018, Fargo stated, "The permanent residency card was sent to me but it got returned back as undeliverable of not having my mailbox at that time. The card was sent second time, but . . . it got lost by the US Postal Service Office 96950 in Saipan." (ECF No. 33, Document 1.) On May 24, 2018, he sent a message to USCIS-Section508@uscis.dhs.gov, stating that on February 8, 2018, he asked for help from Section 508 in finding his advance parole and his green card, but has received no response. (ECF No. 33, Document 8.)[2] He complained that he had been unable to use the Outside Normal Processing Time utility on the USCIS website because he had not been given the identification numbers and other information necessary to make an e-request. (*Id.*)

Fargo has not plausibly pled that he has a clear claim to a replacement green card. Although the March 17, 2017 letter from USCIS does at one point refer to a "service request regarding your Permanent Resident Card," elsewhere in the same letter the type of service requested is listed as "Non-Delivery of Employment Authorization Card," and the case type is listed as "I-765," which is an application for an EAD.

The clear and certain evidence Fargo has provided that his application for employment authorization was approved in December 2016 belies his claim that he has a right to a green card

---

[2] Section 508 of the Rehabilitation Act of 1973, as amended in 1998, requires federal agencies to make their electronic and information technology accessible to people with disabilities.

5

as a lawful permanent resident. A green card holder does not need an EAD. An alien who is a lawful permanent resident is "authorized to be employed in the United States without restrictions as to location or type of employment . . ." 8 C.F.R. § 274a.12(a). An alien who is applying for adjustment of status to lawful permanent resident must apply for work authorization, 8 C.F.R. § 274a.12(c)(9); but Fargo is claiming that his status has already been adjusted and he has a right to a *replacement* green card. The previously discussed evidence that USCIS issued him an employment authorization starting on December 19, 2016, with a EAD to follow shortly, strongly suggests that the card referred to in the March 17, 2017 letter was an EAD, not a green card.

An error on the part of the unknown Texas Service Center employee who responded on March 17, 2017 to Fargo's service request seems to have left Fargo with the mistaken belief he has both an advance parole/EAD and a green card. Unfortunately, it has led him down some blind alleys, as when he sent an email to the DHS National Record Center requesting copies that he was awarded "on December 22, 2016 Advance Parole and in March, 2017, Permanent Residency Card . . ." (Responses, Doc. 9.) The misunderstanding, however, does not make the existence of a permanent resident card a reality.

Even if somehow the card in question really is a green card, Fargo has not pled facts showing that no adequate remedy is available to him other than mandamus. Fargo asserts that "Defendant has demonstrated a strong unwillingness to give me the replacement card." (Responses at 3.) The facts as Fargo has stated them and the exhibits he has submitted to support them show otherwise. The Government mailed him a card twice. The first time it was mailed to the last address Fargo had given them – apparently, he had not updated his address. The second card was lost in the mail. The evidence presented thus far has not demonstrated the Government's reluctance to issue him a replacement card.

Fargo states that on November 2, 2017, the "USCIS Saipan Office Lady in charge spent a lot of time online submitting my Application for Replacement Card while I waited outside."

6

(Complaint, No. 18-CR-16, ECF No. 1-1, at 2.) Once the application was submitted, she told him his job "is to wait and wait. It is all what I know about the submitted application. The USCIS Saipan Office can submit to Honorable Court more information." (*Id.*) Fargo has not submitted a copy of the application or a receipt notice or receipt number. He has submitted a USCIS instruction sheet that says a receipt notice will be "mailed to the address you provided on your application. If you have a USCIS online account, your receipt notice will also be posted to your USCIS Online Account." (*Id.* at 8.) Fargo states that he "cannot use this nice and effective service because I do not know the receipt number." (*Id.* at 3.) It seems he is confused here, because a receipt number is not needed to access an online account.[3]

It is not the job of the Saipan USCIS office to give the Court evidence that Fargo submitted an I-90 application and supply the Court with the receipt notice. Fargo must obtain that information himself. If he does not have it in his possession, the most basic step would be to go back to the Saipan USCIS office and make inquiries there. But Fargo has not stated that he has done so, and therefore cannot tell us what their response was. It appears he could obtain the necessary information online if he establishes, or has already established, an online account. If he needs help with online access, he needs to find someone to assist him.

Because Fargo has not pled facts that plausibly show he has a pending application for a replacement permanent resident card and that he has no other adequate remedy, the Court does not reach the question of whether an 11-month delay in processing such a request is reasonable. *See In re A Community Voice,* 878 F.3d at 784 ("an agency cannot unreasonably delay that which it is not required to do").

3. <u>Application for Refugee Status</u>

---

[3] *See* https://myaccount.uscis.dhs.gov. The home page describes how to create a new account, and requires only an email address and password for access.

Fargo states that he applied for refugee status in August 2016 and has submitted as evidence an I-589 Application for Asylum and for Withholding of Removal. (Responses, Doc. 5, ECF No. 33.) In the application, he stated that he has been living in the CNMI since August 22, 2012. (*Id.,* Part C(5).)

The application Fargo says he submitted is for asylum, not refugee status. Asylum is the relief available to aliens who are physically present in the United States, as Fargo was in 2016. *See* 8 U.S.C. § 1158(a)(1). The two statuses are related; an applicant for asylum must prove that he is a refugee as defined in section 1101(a)(42)(A) of Title 8 of the United States Code. *See* 8 U.S.C. § 1158(b)(1)(B)(i).

The CNMI is in a transition period between its own sovereign control of immigration to full application of federal immigration law, as set forth in Title VII of the Consolidated Natural Resources Act of 2008, Pub. L. 110-229, May 8, 2008, 122 Stat. 754; 48 U.S.C. 1806(a)(2). During the transition period, asylum is unavailable to aliens living in the Commonwealth. "Section 208 of the Immigration and Nationality Act (8 U.S.C. § 1158) [concerning asylum] shall not apply during the transition period to persons physically present in the Commonwealth or arriving in the Commonwealth . . ." 48 U.S.C. § 1806(a)(7).[4]

Even if it is impossible for Fargo to be granted asylum while living in the Commonwealth, USCIS might arguably have a ministerial duty to respond to his application – *if* he actually submitted one. The application and supplements he filed with the Court have many irregularities. The application itself is unsigned and undated. (Responses, Doc. 5, Part D.) Fargo did sign and date Supplement A, on August 11, 2016. (*Id.,* Suppl. A.) Supplement A is to be submitted only when an applicant needs additional space to list all his or her children. Fargo does not list any children, either in the application itself or in his Supplement A, which is blank. In the application

---

[4] Section 1806(a)(7) was unaffected by the Northern Mariana Islands U.S. Workforce Act of 2018, Pub. L. 115-218, July 24, 2018, 132 Stat. 1547, which extended the termination of the transition period from December 31, 2019 to December 31, 2029.

he states, "I have applied for . . . asylum in 1996, 2002 and 2[0]12 because I had no idea of the possibility to ask for refugee status." (*Id.,* Part C(1).) Fargo does not state the date on which he submitted the Form I-589 asylum application, or where he submitted it to. According to the I-589 instruction sheet,[5] it must be filed with the immigration court or Board of Immigration Appeals if the applicant is currently in proceedings there. If the applicant is not in proceedings, the application goes to a service center according to the applicant's location – except that no service center is listed as serving the CNMI. That is because "[p]ursuant to 48 U.S.C § 1806(A)(7), if you are physically present in, or arriving in the Commonwealth of the Northern Mariana Islands, you may not apply for asylum until January 1, 2020; however, you may use Form I-589 . . . to apply for withholding of removal and for protection from removal under the Convention Against Torture in Immigration Court proceedings." (Instructions, Part I(1).)[6] In short, if Fargo was in removal proceedings, the application would have had to be made directly in the immigration court; otherwise, it could not be made at all.

Fargo has submitted an email dated February 4 – from context, the year appears to be 2017 – from the USCIS Chief of Customer Engagement Center that begins as follows: "Thank you for your inquiry to Former Secretary of Homeland Security Jeh Johnson regarding your Accuracy Monetizers Nation Mega project, and your request for refugee status. The U.S. Department of Homeland Security referred your inquiry to the U.S. Citizenship and Immigration Services (USCIS), Special Cases Unit. Your inquiry has been assigned case# 1137447." (Responses, Doc. 4.) Fargo points to this letter as evidence his application for refugee status was

---

[5] Form I-589 Instructions 5/16/17 are available at
https://www.uscis.gov/sites/default/files/files/form/i-589instr.pdf (accessed October 16, 2018).

[6] This information is also available at
https://www.uscis.gov/legal-resources/immigration-commonwealth-northern-mariana-islands-cnmi/us-immigration-law-commonwealth-northern-mariana-islands-cnmi

9

received. Fargo has not submitted a copy of the referenced inquiry. It appears to have been a letter or email directly to the Secretary of DHS inquiring about refugee status, not an application. There is no basis to conclude that the Special Cases Unit had a ministerial duty to follow up with Fargo.

### IV. CONCLUSION

The Court has given Fargo ample opportunity to demonstrate he has a claim to the extraordinary remedy of mandamus on his applications for asylum, a replacement permanent resident card, and his 2016 advance parole with his EAD. As shown above, asylum is impossible for him while he is present in the CNMI, he has failed to show a clear and certain right to a replacement permanent resident card, and he has failed follow through with basic means of obtaining relief from immigration authorities on his advance parole and EAD claim.

Wherefore the Court ORDERS as follows:

1. Fargo's claim for mandamus relief as to his advance parole/EAD card is dismissed with prejudice. Amendment would be futile, because even if he asked for the return of his card and was denied, the U.S. Immigration and Customs Enforcement does not have a ministerial duty to return it to him.

2. Fargo's claim for mandamus relief as to his alleged application for a replacement permanent green card is dismissed without prejudice. Fargo may, within 14 days of this order, file a Motion for Leave to File a Second Amended Complaint. Leave will not be granted unless Fargo can plausibly show that he, or an agent on his behalf, actually filed a Form I-90 on or about November 2, 2017, and that he has followed up appropriately at the Saipan USCIS office. Failure to file the motion within 14 days will result in a dismissal with prejudice.

3. Fargo's claim for mandamus relief as to his alleged application for refugee status using a Form I-589 Application for Asylum and for Withholding of Removal is

dismissed with prejudice. Amendment would be futile because asylum is statutorily unavailable to him and an application for withholding of removal would properly be before the immigration court.

IT IS SO ORDERED this 16th day of October, 2018.

/s/ Ramona V. Manglona
RAMONA V. MANGLONA
Chief Judge